UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| AMERICAN BANKERS ASSOCIATION, THE FINANCIAL SERVICES ROUNDTABLE, and CONSUMER BANKERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> BILL LOCKYER, in his official capacity as Attorney General of California, HOWARD GOULD, in his official capacity as Commissioner of the Department of Financial Institutions of the State of California, WILLIAM P. WOOD, in his official capacity as Commissioner of the Department of Corporations of the State of California, and JOHN GARAMENDI, in his official capacity as Commissioner of the Department of Insurance of the State of California, <br><br> Defendants. | NO. CIV. S 04-0778 MCE KJM <br><br> <u>MEMORANDUM AND ORDER</u> |

----oo0oo----

Plaintiffs American Bankers Association, The Financial Services Roundtable, and Consumers Bankers Association

1

("Plaintiffs") sued various California state officials (Attorney General Bill Lockyer, Department of Insurance Commissioner John Garamendi, Commissioner of the Department of Corporations William P. Wood, and Commissioner of the Department of Financial Institutions Howard Gould)(collectively, "Defendants") on the ground that the affiliate sharing provisions of California's Financial Information Privacy Act, commonly referred to as SB1, ("SB1") are preempted by federal law.  This Court granted Defendant's motion for summary judgement.  On appeal, the Ninth Circuit reversed holding that federal law does partially preempt SB1 and instructed this Court to ascertain the scope of that preemption.  Specifically, this Court is to decide whether any part of SB1's affiliate sharing provision survives preemption and, if so, can that surviving portion be severed from the remainder of SB1.  For the reasons set forth below, this Court finds that SB1's affiliate sharing provision does not survive preemption and, even if some limited applications could be saved, they cannot be severed from the remainder of the statute.

**BACKGROUND**

This case involves the convergence of the Fair Credit Reporting Act ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003("FACTA"), Title V of the Gramm Leach Bliley Act ("GLBA") and California's SB1.  These four legislative enactments generally seek to govern the treatment of personal information albeit to varying degrees.  In FCRA, FACTA and GLBA, Congress created a statutory framework that seeks to

strike a balance between providing citizens affordable financial services while protecting them against invasions of privacy and the misuse of personal information. Through SB1, the California Legislature is seeking to accord the citizens of California with more stringent protections than those afforded under the federal scheme which has given rise to this litigation.[1]

**STANDARD**

Plaintiffs have styled their motion as one for declaratory relief. The operation of the Declaratory Judgment Act is procedural only. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 94 L. Ed. 1194, 70 S. Ct. 876 (1950)(citations and quotations omitted). Generally, declaratory judgment actions are justiciable if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941). Declaratory relief is appropriate when, as here, (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. Eureka Federal Sav. & Loan Asso. v. American Casualty Co., 873 F.2d 229, 231 (9th Cir., 1989)(citations and

---

[1] While the additional protections of SB1 extend to both affiliate sharing of information as well as third party information sharing, only the affiliate sharing provisions are at issue here.

3

1 | quotations omitted).
2 |     Plaintiffs are also seeking injunctive relief against
3 | enforcement of SB1's affiliate sharing provisions.  In ruling on
4 | a request for injunctive relief, the trial court considers the
5 | irreparable injury to the moving party and the inadequacy of
6 | legal remedy for such injury. See Weinberger v. Romero-Barcelo,
7 | 456 U.S. 305, 312, 102 S. Ct. 1798, 1803, 72 L. Ed. 2d 91 (1982).
8 | When seeking a preliminary injunction, a party must demonstrate
9 | either (1) a combination of probable success on the merits and
10 | the possibility of irreparable injury if relief is not granted;
11 | or (2) the existence of serious questions going to the merits
12 | combined with a balancing of hardships tipping sharply in favor
13 | of the moving party. Int'l Jensen, Inc. v. Metrosound U.S.A., 4
14 | F.3d 819, 822 (9th Cir., 1993).  The standard for a permanent
15 | injunction is essentially the same as for a preliminary
16 | injunction with the exception that the plaintiff must show actual
17 | success on the merits rather than a mere likelihood of success.
18 | See Amoco Production Co. et. al. v. Village of Gambeel et. al.,
19 | 480 U.S. 531, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987).  When
20 | Actual success on the merits is shown, however, the inquiry is
21 | over and a party is entitled to relief as a matter of law
22 | irrespective of the amount of irreparable injury which may be
23 | shown. Sierra Club v. Penfold, 857 F.2d 1307, 1318 n.16 (9th
24 | Cir., 1988).
25 | //
26 | //
27 | //
28 | //

**ANALYSIS**

As explained above, the Ninth Circuit declared that FCRA's affiliate sharing preemption clause preempts SB1 insofar as it attempts to regulate the communication between affiliates of information as that term is used in 15 U.S.C. § 1681a(d)(1). That is, SB1's affiliate sharing provision is preempted to the extent that it applies to information shared between affiliates concerning consumers' "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living that is used, expected to be used, or collected for the purpose of establishing eligibility for credit or insurance, employment, or other authorized purposes. See Am. Bankers Ass'n. v. Gould, 412 F.3d 1081, 1087 (9th Cir., 2005). This Court has been charged with determining whether, applying this restricted meaning of "information," any portion of the affiliate sharing provision of SB1 survives preemption and, if so, whether it is severable from the portion that does not.

**1.   Survival**

Defendants first contend that a significant portion of information, as defined above, falls outside the preemptive reach of FCRA. Defendants argue that although FCRA appears to encompass a broad spectrum of information, there is a whole host of information that does not meet the definition of information as that term is used in 15 U.S.C. § 1681a(d)(1), leaving

5

California free to govern the sharing of that information among affiliates.  This Court disagrees.

For information sharing to be preempted under FCRA, the information must satisfy two conditions.  First, it must fall within the scope of information governed by FCRA.  Specifically, it must concern a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." Id.  Second, the information must be for an FCRA authorized purpose.  To constitute an authorized purpose under FCRA, the information must be "used, expect to be used, or collected for the purpose of establishing eligibility for credit or insurance, employment, or [other authorized purposes.] Id.  The definition of information under FCRA is a two pronged inquiry that encompasses both the scope of information that is governed under FCRA as well as the purpose for which that information is to be collected, used or expected to be used.  Information that does not meet both the scope and purpose prongs of information as defined under FCRA is not federally protected.

Defendants concede that virtually all information regarding a consumer falls within the scope prong of information as defined under FCRA.  Defendants' axial argument, however, is that a vast sea of information exists that does not meet the purpose prong of information as defined under FCRA, and therefore, is subject to SB1.  For example, Defendants argue that if information is collected by a financial institution solely to ascertain whether an individual is likely to purchase a product, that information is not subject to FCRA regulation.

Plaintiffs argue, however, that it would be virtually impossible to ascertain in advance whether or not information collected and shared by a financial institution would satisfy an FCRA authorized purpose.  Plaintiffs contend that parsing what information meets the purpose prong of information as defined by FCRA versus that which does not would cast a cloud of uncertainty over the preemption that Congress has decreed in the FCRA.  This Court agrees.

A financial institution may gather and share information with its affiliates believing in good faith that it is not required to comply with SB1 because the information will be used for an FCRA authorized purpose.  If, in fact, the information is not so used, the financial institution would have acted in violation of SB1 exposing it to the penalties thereunder.[2]  This creates the untenable situation of forcing California financial institutions to either risk violation of SB1 or comply therewith whether or not the information is for an FCRA authorized purpose.

Further, the same information could be gathered for both FCRA authorized and unauthorized purposes.  Imposing SB1's requirements on the collection or use of this dual purpose information necessarily violates FCRA's preemption clause because California would be imposing a requirement with respect to the exchange of information among affiliates as expressly prohibited by FCRA.  See 15 U.S.C. § 1681t(b)(2).

While in theory it seems financial institutions could

---

[2] The only certain way to avoid violating SB1 when sharing information with affiliates, would be to comply with SB1's notice and opt out requirements whether or not the information appears prospectively to be federally protected.

7

delineate in advance what information enjoys federal protection and which does not, in practice any such delineation would simply be conjecture. Accordingly, this Court finds that no portion of SB1's affiliate sharing provision survives.

**2.   Severance**

Although we find that no portion of SB1's affiliate sharing provision survives, we reach the issue of severability as a distinct ground of preemption. As an initial matter, the parties agree and this Court concurs that whether a state statute may be reformed or construed in a manner that preserves its constitutionality is a question of state, and not federal, law. Kopp v. Fair Pol. Practices Com., 11 Cal. 4th 607; 905 P.2d 1248; 47 Cal. Rptr. 2d 108 (Cal. Sup. Ct., 1995).

Defendants argue that this Court has the authority to sever only those applications of SB1 that are unconstitutional while retaining those applications that are not. Essentially, Defendants are seeking to have this Court reform or rewrite SB1 to save it from constitutional infirmity. In support of their position, Defendants rely on Kopp wherein the California Supreme Court rejected the view that "a court lacks authority to rewrite a statute in order to preserve its constitutionality or that the separation of powers doctrine ... invariably precludes such judicial rewriting." 11 Cal. 4th at 615.

This precise argument was raised in another federal court where the court explained that "...a federal court, which derives its power from the federal Constitution and is bound by

8

principles of federalism, has no power by virtue of California's separation of powers doctrine, or otherwise, to rewrite a state statute, even to save it from unconstitutionality." California Prolife Council PAC v. Scully, 989 F. Supp. 1282, 1301 (D. Cal., 1998).  In fact, the Ninth Circuit has flatly declared that it is "not within the province of [a federal] court to 'rewrite' [a state law] to cure its substantial constitutional infirmities." Tucker v. State of Calif. Dept. of Education, 97 F.3d 1204, 1217 (9th Cir., 1996).[3]  The Supreme Court has likewise adhered to this general principle.  See e.g. Am. Booksellers Assn., 484 U.S. 383, 387; 108 S. Ct. 636; 98 L. Ed. 2d 782 (1988)(stating in the First Amendment context that "we will not rewrite a state law to conform it to constitutional requirements"); see also Blount v. Rizzi, 400 U.S. 410, 419, 27 L. Ed. 2d 498, 91 S. Ct. 423 (1971) (declaring that "it is for Congress, not this Court, to rewrite the statute").

Although eliminating unconstitutional conditions is not necessarily the same as adding new language, the Supreme Court has voiced a similar note of caution about eliminating unconstitutional conditions when a federal court reviews state

---

[3] A number of other circuits have followed this same reasoning.  See Eubanks v. Wilkinson, 937 F.2d 1118, 1126 (6th Cir., 1991)(federal courts "must take the state statute or municipal ordinance as written and cannot find the statute or ordinance constitutional on the basis of a limiting construction supplied by it rather than a state court.); see also Hill v. City of Houston, 789 F.2d 1103, 1112 (5th Cir.)("[A] federal court may not itself provide a limiting construction of legislation that is not so readily susceptible"), aff'd 482 U.S. 451, 96 L. Ed. 2d 398, 107 S. Ct. 2502 (1987); see also Erznoznik v. City of Jacksonville, 422 U.S. 205, 216, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975) (narrowing construction only permitted if the language is "easily susceptible of a narrowing construction").

statutes. See, e.g., Welsh v. United States, 398 U.S. 333, 363 n. 15, 26 L. Ed. 2d 308, 90 S. Ct. 1792 (1970)(noting the Court's more limited discretion "to extend a policy for the States even as a constitutional remedy").

Both parties concede that the only means of severing the unconstitutional portion of SB1 would be to accord a narrow construction to the term "nonpublic personal information" by striking those applications that are unconstitutional. Defendants are necessarily asking this Court to "dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court." Hill v. Wallace, 259 U.S. 44, 70, 66 L. Ed. 822, 42 S. Ct. 453 (1922). Even were any part of SB1's affiliate sharing provision spared from constitutional infirmity, this Court lacks the power to rewrite SB1 to excise those applications that are unconstitutional.

**CONCLUSION**

The Court finds that a judgment in favor of Plaintiffs will serve a useful purpose in clarifying and settling the scope of FCRA preemption as it relates to SB1 and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action. Accordingly, declaratory judgment is appropriate and final judgement in favor of Plaintiffs is therefore entered. In addition, the Court finds that Plaintiffs have established actual success on the merits and are entitled to

1  injunctive relief as a matter of law.  Defendants are hereby
2  permanently enjoined from enforcing SB1's affiliate sharing
3  provisions as codified in California Financial Code section
4  4053(b)(1) to the extent they are preempted by 15 U.S.C. section
5  1681t(b)(2).

7       IT IS SO ORDERED.

9  DATED: October 4, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE